# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| MT. CARMEL MUTUAL INSURANCE ASSOCIATION, as subrogee of Jacob Kuker, insured,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CNH AMERICA, L.L.C.,<br><br>　　　　Defendant. | No. C12-4112-DEO<br><br>**ORDER** |

## I.　INTRODUCTION

This case is before me on plaintiff's motion (Doc. No. 40) to compel defendant to supplement discovery responses.[1]  Defendant has filed a resistance (Doc. No. 55) and plaintiff has filed a reply (Doc. No. 58).  I heard oral arguments by telephone on November 26, 2014.  Attorney Allyson Dirkson appeared for plaintiff while attorneys Maureen Bickley and Richard Kirschman appeared for defendant.  The motion is fully submitted and ready for decision.

## II.　RELEVANT BACKGROUND

Plaintiff Mt. Carmel Mutual Insurance Association (Mt. Carmel) filed this action in an Iowa state court on September 17, 2012.  Doc. No. 2.  Defendant CNH America,

---

[1] Plaintiff failed to file a supporting brief, as required by Local Rule 7(d).  While I will, nonetheless, address this motion on its merits, plaintiff is advised that any future noncomplying motion is likely to be denied summarily.

L.L.C. (CNH), removed the case to this court on December 18, 2012, on the basis of diversity jurisdiction. Doc. No. 1. As Judge O'Brien previously summarized:

> This case arises out of a fire that destroyed a piece of farm equipment; specifically, a combine, owned by Jacob Kuker. The Plaintiff is Mr. Kuker's insurance company. After the fire destroyed Mr. Kuker's combine, the Plaintiff reimbursed him for his loss. CNH American L.L.C. . . . manufactured or sold the combine.

Doc. No. 15 at 1-2.

In its petition, Mt. Carmel alleges that the combine was designed defectively in that CNH used a plastic material, rather than metal, to construct the fuel tank. Doc. No. 2 at ¶¶ 9-10. Mt. Carmel contends that on October 29, 2010, a small fire started when grain dust and crop debris ignited during use of the combine and that such fires are reasonably foreseeable. *Id.* at ¶¶ 3, 5, 12. Mt. Carmel alleges that the fire should have been easily extinguished with little or no damage to the combine by use of two fire extinguishers that Mr. Kuker discharged upon discovering the fire. *Id.* at ¶ 8. However – and here is where the alleged defect comes into play – the fire instead spread because it allegedly melted a hole in the plastic fuel tank, causing diesel fuel to spill onto the flames, thus intensifying the fire. *Id.* at ¶ 9. According to Mt. Carmel: "A reasonable alternative design employing a metal fuel tank would have prevented it from melting from the small grain fire, avoiding the release of diesel fuel into the flames, and in allowing the small grain fire to be easily extinguished and avoiding any significant damage to the combine." *Id.* at ¶ 11. CNH has filed an answer in which it denies liability and raises various defenses. Doc. No. 3. Trial, having recently been continued, is now scheduled to begin May 4, 2015. Doc. No. 52.

## III. THE CURRENT DISPUTE

During discovery, Mt. Carmel served two sets of interrogatories and document requests. CNH served its responses to the first set on May 22, 2013, and its responses to the second set on August 30, 2013. About one year later, as the September 1, 2014, discovery deadline was looming, Mt. Carmel requested that CNH supplement certain responses. Doc. No. 40-1 at 3-10 (letter dated August 26, 2014). Because Local Rule 37(c) requires that all discovery motions be filed no later than fourteen (14) days after the close of discovery, Mt. Carmel filed its motion to compel on September 15, 2014. Mt. Carmel noted that negotiations about the disputed issues were ongoing.

The motion raised issues about CNH's responses to the following discovery requests: (a) Interrogatories 10, 11 and 28 and (b) Document Requests 6, 23, 31, 32, 33, 37, 38 and 39. CNH then sought (Doc. No. 47) an extension of its deadline to resist, stating that the parties had reached a "tentative resolution" of the pending discovery disputes. Doc. No. 47. The deadline was extended to November 5, 2014. Doc. No. 48. CNH filed its resistance on that date, stating that the parties have, in fact, reached agreement on nearly all of the disputed issues. However, CNH reported (and Mt. Carmel agrees) that the parties could not resolve their disagreement over the scope of Document Requests 31, 32 and 33, which read as follows:

> **REQUEST NO. 31**: All documents or entries in the ASIST Knowledge database regarding fuel tanks in any combine, including but not limited to, the combine involved in the incident in question.
>
> **REQUEST NO. 32**: All documents or entries in Applix regarding fuel tanks in any combine, including but not limited to, the combine involved in the incident in question.
>
> **REQUEST NO. 33**: All materials in eTim regarding fuel tanks in any combine, including but not limited to, the combine involved in the incident in question.

3

Doc. No. 55 at 2. CNH states that the ASIST and Applix databases are one in the same, meaning Requests 31 and 32 seek identical information. CNH further states that the "eTim" database referenced in Request 33 is actually called "TIM."[2]

The parties have agreed that a search of these databases for documents containing the terms "fuel tank" and "fire" is appropriate. However, CNH seeks to limit its production of documents returned by those searches to those involving its "20-Series" of combines, while Mt. Carmel contends that it is entitled to all documents returned by the searches, regardless of combine model.

## IV. DISCUSSION

### A. *Applicable Standards*

Generally, a party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense. *See* Fed. R. Civ. P. 26(b)(1). The scope of permissible discovery is broader than the scope of admissibility. *See, e.g., Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Nonetheless, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id*. Moreover, discovery must not only be relevant, it must also be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(2)(C).

---

[2] CNH argues that I should deny Mt. Carmel's motion with regard to Request 33 because Mt. Carmel did not address that request in its August 26, 2014, letter. *See* Doc. No. 40-1 at 3-10. Thus, CNH contends, Mt. Carmel failed to make the required good faith effort to resolve disputes about Request 33 informally. *See* Fed. R. Civ. P. 37(a)(1); Local Rule 37(a). While this seems like a good argument at first glance, it crumbles on close inspection. In fact, Mt. Carmel incorrectly referred to Request 33 as "Request No. 29" in its letter while clearly addressing the substance of Request 33. Doc. No. 40-1 at 8. CNH obviously understood that Mt. Carmel meant to refer to Request 33, as it too addressed the substance of Request 33 in its response. Doc. No. 40-1 at 18-19. In both letters, the discussion of "Request No. 29" is located immediately after the discussion of Request 32 and immediately before the discussion of Request 34. Under these circumstances, CNH's procedural argument is baseless.

Evidence of other, allegedly-similar incidents is often admissible in product liability cases. *See, e.g.*, *Chism v. CNH America L.L.C.*, 638 F.3d 637 (8th Cir. 2011); *Katzenmeier v. Blackpowder Products, Inc.*, 628 F.3d 948 (8th Cir. 2010). A plaintiff may use such evidence to show "defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." *Lovett ex rel. Lovett v. Union Pacific R. Co.*, 201 F.3d 1074, 1081 (8th Cir. 2000). However, "[u]nless the facts and circumstances of other incidents are 'substantially similar,' such evidence is inadmissible because admitting such evidence could 'raise extraneous controversial issues, confuse the issues, and be more prejudicial than probative.'" *Katzenmeier*, 628 F.3d at 951. The party seeking admission of evidence concerning other incidents has the burden to show that the circumstances between the incidents are substantially similar. *J.B. Hunt Transport, Inc. v. General Motors Corp.*, 243 F.3d 441, 445 (8th Cir. 2001) (citation omitted). The other party may then need to rebut the "substantial similarities." *Estate of Thompson v. Kawasaki Heavy Industries, Ltd.*, 933 F. Supp. 2d 1111, 1140 (N.D. Iowa 2013).

Discovery concerning other incidents is not strictly limited to the exact product model at issue, as information about similar models may be relevant. *Hofer*, 981 F.2d at 381. Of course, the question is always: "How similar is similar enough?" In *Hofer*, the Eighth Circuit Court of Appeals reviewed decisions from other jurisdictions in considering this question and found, under the facts present in that case, that the burden of producing documents concerning certain prior truck models outweighed any limited, potential relevance. *Id.* at 381. The court favorably-referenced one case for the proposition that "[g]enerally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation." *Id.* (quoting *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122, 126 (S.D.N.Y. 1986)). The court then noted, by contrast:

> [D]iscovery has been denied where the predecessor models did not share pertinent characteristics with the products at issue. Sufficiently dissimilar characteristics have been found to exist where a plaintiff sought information about a vehicle recall, but the models recalled did not have the same component as the one at issue in the litigation . . . .

*Id*. [citations omitted]. Thus, identifying "pertinent characteristics," and determining if other models share those characteristics, is important to determining the scope of permissible discovery concerning other incidents.

*B. Analysis*

As noted above, the design defect Mt. Carmel alleges in this case arises from the material used to construct the combine's fuel tank. Mt. Carmel contends that the risk of fire is foreseeable during use of a combine and that the damage caused by the fire in this case was exacerbated by CNH's use of a non-metal fuel tank. According to Mt. Carmel, if the tank had been metal, it would not have failed and fuel would not have escaped to intensify the fire. Doc. No. 2 at ¶¶ 9-11. Based on this theory, there is little doubt that some amount of discovery concerning other combine fires is appropriate. And, as noted above, the parties have agreed that CNH should search its databases for documents containing the terms "fuel tank" and "fire." The dispute is whether CNH may limit its production of the resulting documents to those involving its "20-Series" of combines.

CNH notes that the combine at issue in this case is a model 8120, which is part of a family of combine models that also includes models 7120 and 9120. CNH contends that it should not have to produce documents relating to its other series of combines, whether manufactured before or after the fire at issue here. CNH states that it has manufactured axial flow combines for over 35 years, with numerous design changes occurring over time. CNH has submitted deposition testimony (albeit from another

case) indicating that the fuel tanks on the predecessor series (the "10-Series") were shaped differently and were placed in a different location than those on the 20-Series. Doc. No. 55 at 4 (citing Doc. No. 55-6).[3] According to CNH, neither the 10-Series nor any other series of its combine models is similar enough to the 20-Series to permit discovery of incidents involving those other series. Thus, while CNH does not argue that it would be overly burdensome or expensive for it to search its databases for incidents involving other models, it argues that incidents concerning those other models are irrelevant.

Mt. Carmel disagrees. It argues that differences in the shape and/or location of fuels tanks on other models are immaterial, as its claim is based entirely on the fact that a non-metal material was used to construct the 8120's fuel tank. Mt. Carmel points to testimony that this material "has been a standard for many, many years." Doc. No. 58 at 7 (citing Doc. No. 58 at 23). While the shape and location of the fuel tanks may have changed, it appears that the material used to construct those tanks has been largely unchanged over several of CNH's combine series. Doc. No. 58 at 7-8 (citing CNH's interrogatory answers). According to Mt. Carmel, this makes CNH's effort to limit discovery to the 20-Series unfairly restrictive.

In addition, Mt. Carmel argued during the hearing that evidence of incidents involving combines with metal fuel tanks may also be relevant, as it is Mt. Carmel's position that a metal tank would have prevented this loss. If, for example, CNH has numerous incident reports concerning combine fires near metal fuels tanks, and none of those reports reflect that the metal tanks failed, that evidence is conceivably relevant to Mt. Carmel's design-defect theory. Thus, Mt. Carmel contends that all documents returned by use of the agreed search terms should be produced.

---

[3] The witness did indicate, however, that the material used to construct the fuel tank did not change between the 10-Series and the 20-Series. Doc. No. 55-6 at 3 (Dep. at 181).

I agree with Mt. Carmel. It has made the threshold showing of potential relevance necessary to require that CNH produce all documents that are returned when its databases are searched, regardless of which combine model was involved. Simply put, the "pertinent characteristic" for determining the proper scope of discovery is the fuel tank – regardless of the material used to construct it. By agreeing to limit the database searches to documents that include the terms "fuel tank" and "fire," Mt. Carmel has taken reasonable steps to narrow its requests to documents that may lead to the discovery of admissible evidence.

Of course, this says nothing about whether evidence of any particular incident will be admissible at trial. For purposes of discovery, however, CNH may not limit its production of the documents that are returned when its databases are searched for the agreed terms. Mt. Carmel is entitled to discover all such documents, regardless of which combine model was involved.

## V. CONCLUSION

For the reasons set forth herein, Mt. Carmel's motion (Doc. No. 40) to compel is **granted in part** and **denied in part**, as follows:

1. The motion is **granted** with regard to Mt. Carmel's document requests 31, 32 and 33. On or before **December 17, 2014**, CNH shall supplement its responses to those requests by producing all documents returned when the databases at issue are searched for the terms "fuel tank" and "fire" in relation to any combine.

2. The motion is **denied as moot** with regard to all other discovery requests addressed in the motion.

3. Mt. Carmel's request for an award of costs and attorney fees associated with the motion is **denied**.

**IT IS SO ORDERED.**

**DATED** this 2nd day of December, 2014.

                                _____
                                LEONARD T. STRAND
                                UNITED STATES MAGISTRATE JUDGE