IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

**MT. CARMEL MUTUAL INSURANCE ASSOCIATION,** as subrogee of Jacob Kuker, insured,

        Plaintiff,

v.

**CNH AMERICA, LLC,**

        Defendant.

No. 12-CV-4112-DEO

ORDER ON MOTION FOR SUMMARY JUDGMENT

---

## I. INTRODUCTION

Currently before this Court is Defendant, CNH America, LLC's [hereinafter CNH], Motion for Summary Judgment. Docket No. 44. The parties appeared for a hearing on January 20, 2015. Following the hearing, the Court gave each party seven days to supplement the record, which they did. After hearing the parties' arguments and reviewing their filings, the Court took the issues under advisement and now enters the following.

## II. PROCEDURAL HISTORY

This case arises out of a fire that destroyed a piece of farm equipment, a combine, owned by Jacob Kuker on October 29, 2010. The Plaintiff is Mr. Kuker's insurance company. After the fire destroyed Mr. Kuker's combine, the Plaintiff

reimbursed him for his loss. CNH American, LLC, manufactured the combine. The Plaintiff alleges that a design defect exacerbated the fire damage, and the Defendant is liable for the damage caused by the design defect.

The Plaintiff originally filed this case as a state court petition on September 17, 2012. Docket No. 2. The Defendant accepted service on September 25, 2012, and filed an Answer on October 23, 2012. Docket No. 3. Thereafter, the Defendant served two discovery questions on the Plaintiff. Docket No. 1, Ex. 4. Mt. Carmel answered that none of its policy holders and/or members are citizens of the state of Wisconsin or the State of Delaware. Docket No. 1, Ex. 4. CNH then filed a Notice of Removal on December 18, 2012. Docket No. 1. On January 9, 2013, the Plaintiff filed a Motion to Remand the case back to state court. Following a hearing, this Court denied that Motion on February 22, 2013. Docket No. 15.

After the Court's Order, Docket No. 15, denying a remand to state court, the parties engaged in a protracted round of discovery which involved several disputes and deadline extensions. First, the parties engaged in a discovery dispute regarding a potential expert witness for the Plaintiff, which

U.S. Magistrate Judge Strand resolved.  See Docket No. 35.

The parties also disputed Plaintiff's Motion for a Protective

Order regarding their expert witnesses, which U.S. Magistrate

Strand denied.  See Docket No. 43.[1]  Finally, the parties

disputed Plaintiff's discovery request for documents related

to fuel tanks from CNH.  The Plaintiff ultimately filed a

Motion to Compel, which U.S. Magistrate Judge Strand granted.

See Docket No. 63.

    The Defendant filed the present Motion for Summary

Judgment on October 1, 2014.  Docket No. 44.  The Plaintiff

filed a Resistence on November 26, 2014.  Docket No. 62.  The

Defendant filed a Reply Brief on December 8, 2014.  Docket No.

64.  The Court held a hearing on January 20, 2015.  Following

the hearing, the Plaintiff filed a supplemental resistance on

January 28, 2015.  Docket No. 70.  The Defendant filed a

supplemental reply on February 3, 2015.  Docket No. 71.

## III.  FINDINGS OF FACT

    Many of the facts in this case are undisputed.  As stated

above, this case about a combine fire.  Mr. Jacob Kuker

---

[1]  The parties subsequently agreed to a joint protective
order regarding CNH's produced discovery materials.  See
Docket No. 54.

manages a very large farming operation in rural Iowa and Nebraska. Mr. Kuker bought a 2009 CASE IH 8120 combine [hereinafter the combine], manufactured by the Defendant in July 2009. There is no dispute that the combine was produced by Defendant CNH.

Mr. Kuker was using the combine for normal agricultural purposes in October, 2010. Mr. Kuker used the combine on October 28, 2010. The machine was cleaned that evening. Mr. Kuker was again using the combine the next day, October 29, 2010, a dry day, in rural Monona County, Iowa. There is no evidence that the combine was cleaned on the 29th. At around noon that day, the combine caught fire.[2] Mr. Kuker retrieved a fire extinguisher and attempted to put the fire out but was unable to. Mr. Dietrich Kuker, Mr. Jacob Kuker's brother, was farming along with his brother, and called the fire department. Mr. Dietrich Kuker then began videotaping the fire. The video reveals that the fire quickly spread and consumed the combine. Although the fire department arrived and extinguished the fire, the combine was a total loss.

---

[2]  The underlying cause of the fire is disputed.

Following the fire, the Plaintiff paid Mr. Kuker $377,076.00 under the applicable insurance policy. The Plaintiff now seeks to recover damages from the Defendant, as a subrogee of Mr. Kuker, for a design defect in the combine. It is undisputed that the combine has a plastic fuel tank which contained nearly 200 gallons of the appropriate type of diesel fuel. During the fire, the plastic fuel tank melted, which released the diesel fuel from the tank into the fire. The fuel acted as an accelerant for the fire. The metal oil tank on the combine survived the fire.

As indicated above, the Plaintiff's case is that the Defendant negligently designed the combine. Specifically, the Plaintiff argues that the combine's design was defective because CNH designed the combine with the above mentioned plastic fuel tank. (Plaintiff alleges a metal fuel tank would have been the non-negligent alternative.) The Defendant argues that including a plastic fuel tank on the combine was a reasonable design. The facts related to the plastic fuel tank versus mental fuel tank debate are in dispute, and will be discussed in greater detail below.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P., Rule 56(c).  A fact is *material* if it is necessary "to establish the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  There is a *genuine issue* as to a material fact if, based on the record before the court, a "rational trier of fact" could find for the non-moving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ."  <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771 (8th Cir. 1995).  This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the

moving party unless there is no reasonable alternative. <u>See</u> <u>Matsushita</u>, 475 U.S. at 587; and <u>Morris v. City of</u> <u>Chillicothe</u>, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing <u>Thomas v. Corwin</u>, 483 F.3d 516, 526-27 (8th Cir. 2007)).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395 (8th Cir. 1992) (citing <u>Celotex</u>, 477 U.S. at 323). Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(e)).

## V. ISSUES

Defendant's Motion for Summary Judgment has two main issues. First, the Defendant argues that Plaintiff has failed to allege adequate facts to maintain a cause of action for design defect. Second, the Defendant argues that the Plaintiff, through Mr. Kuker, was at fault for the fire,

because Mr. Kuker failed to properly clean the combine.  The Court will consider these issues below.

## VI.  ANALYSIS

### A.  Design Defect

The first issue regards the Plaintiff's claim that the Defendant's design for the combine was defective.  In its Motion for Summary Judgment, the Defendant argues that the Plaintiff has failed to allege adequate facts to support a design defect claim.

The parties agree that this cause of action for design defect is controlled by Iowa law.  In Iowa, the Restatement (Third) of Torts:  Product Liability Sections 1 and 2, applies to product defect cases.  See <u>Wright v. Brooke Grp. Ltd.</u>, 652 N.W.2d 159, 169 (Iowa 2002), stating, "[i]n summary, we now adopt Restatement (Third) of Torts:  Product Liability sections 1 and 2 for product defect cases."  The relevant provision concerning design defect provides, "A product... is defective in design when the foreseeable risk of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of

distribution, and the omission of the alternative design renders the product not reasonably safe." <u>Id.</u> at §2(b). Thus, in order to support a defective design claim:

> a plaintiff must demonstrate that the harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design. See id. If the court concludes that the plaintiff has presented sufficient evidence 'so that reasonable persons could conclude that a reasonable alternative could have been practically adopted,' the issue becomes one for the trier of fact. See Id. § 2 cmt. f. The Products Restatement does not require a plaintiff to 'produce a prototype in order to make out a prima facie case.' Id. Instead, 'qualified expert testimony on the issue suffices ... if it reasonably supports the conclusion that a reasonable alternative design could have been practically adopted at the time of sale.' Id.

<u>Advance Brands, LLC. v. Alkar-Rapidpak, Inc.</u>, No. 08-CV-4057-LRR, 2011 WL 1790143, at *20 (N.D. Iowa 2011).

Accordingly, to support a design defect claim, the Plaintiff must present relevant, reliable expert testimony that the fuel tank was defective, including: a reasonable, safer alternative design existed at the time of manufacture; and the defective fuel tank was a substantial factor in causing enhanced damages to the Combine. In arguing that the

Plaintiff has failed to do so, the Defendant cites <u>Cummings v.</u>
<u>Deere & Co.</u>, 589 F. Supp. 2d 1108, 1118 (S.D. Iowa 2008).  In
that case, which also involved a combine fire, Senior Judge
Longstaff for the Southern District of Iowa, stated that:

> Iowa law (under the Restatement) does not,
> in all instances, require expert testimony
> in a products liability case to generate a
> jury issue.  See <u>Benedict v. Zimmer, Inc.</u>,
> 405 F. Supp. 2d 1026, 1032 (N.D. Iowa 2005)
> (quoting <u>Reed v. Chrysler Corp.</u>, 494 N.W.2d
> 224, 226-27 (Iowa 1992)) (noting that 'when
> the issues presented relate to matters
> which require only common knowledge and
> experience to understand them, the
> testimony of experts is not essential.').
> However, '[w]hether expert testimony is
> required ultimately depends on whether it
> is a fact issue upon which the jury needs
> assistance to reach an intelligent or
> correct decision ... [D]esign defect cases
> sometimes involve technical, scientific
> issues which cannot be fully understood by
> the average juror without some expert
> assistance.  In such cases, expert
> testimony as to the defective nature of
> defendant's design will be an indispensable
> element of plaintiff's case.'  Id.

<u>Cummings</u>, 589 F. Supp. 2d at 1118.  Judge Longstaff went on to
say that in the <u>Cummings</u> case, the issues were sufficiently
technical that expert testimony was required.  Because the
<u>Cummings</u>' plaintiff did not have sufficient expert testimony,
Judge Longstaff dismissed the case.  CNH implies that the same

analysis applies here:  because the Plaintiff has failed to proffer sufficient expert testimony regarding the alleged design defect, this Court should dismiss the case.

At the outset, the Court notes that the issue in the present case is different from the issue in the <u>Cummings</u> case. Although both cases related to combine fuel tank fires, the <u>Cummings</u> case dealt with static electric shocks from fuel tanks as potential fire sources, while the present case deals with the material used to construct fuel tanks and fuel tank durability during fires.  That distinction aside, both the Plaintiff and the Defendant in the present case agree that some amount of expert testimony is necessary to prove the Plaintiff's claim.  Thus, the argument currently before the Court is not so much whether expert opinion is necessary, but rather, has the Plaintiff produced sufficient expert evidence regarding the design defect?

In arguing the Plaintiff has failed to produce such evidence, the Defendant first argues that the Plaintiff's expert witnesses do not identify a specific defect in the combine's design.  Specifically, the Defendant states that:

[n]either [Plaintiff's expert Duane] Wolf or [Plaintiff's expert Larry] Wyatt opine that the fuel tank was defective. Mr. Wolf, Plaintiff's design defect expert, simply opines that the polyethylene fuel tank was a contributing cause of the extensive damage suffered by the Combine. Yet, it is undisputed that many different components of the Combine were a contributing cause in feeding the fire. In addition, the simple fact that a fire occurred does not demonstrate that the Combine was defective. [Housley v. Orteck Int'l, Inc., 488 F. Supp. 2d 819, 828 (S.D. Iowa 2007)]. Further, Mr. Wolf does not opine that a polyethylene fuel tank presented a foreseeable risk of harm that a small fire would inevitably lead to the complete destruction of the Combine. Nor does Mr. Wyatt, a second liability witness designated by Plaintiff, offer any opinions on the design of the fuel tank. When asked whether he intended to offer any opinions that the Combine was defective because it included a polyethylene fuel tank, Mr. Wyatt refused to offer an opinion that the fuel tank was defective.[3]

Docket No. 44, Att. 1, p. 9.

The Plaintiff responds that:

CNH claims that summary judgment is proper because Mt. Carmel's experts do not opine

---

[3] Duane Wolf is an independent mechanical engineer retained by the Plaintiff. Larry Wyatt is an agricultural engineer and senior investigator for a parent insurance company. Mr. Wolf's deposition is located at Docket No. 62, Att. 3, p. 20; and Mr. Wyatt's deposition is located at Docket No. 62, Att. 3, p. 26.

that the fuel tank of the combine was
defective. This logic is wrong both
because Mt. Carmel's experts do argue that
CNH's choice to use a poly fuel tank is a
defect but more importantly because it is
not the plaintiff's expert that establishes
whether there is a product defect but
rather the jury... the legal requirement
is that the jury apply the risk-utility
balancing test and decide whether a
reasonable alternative design would reduce
the foreseeable risks of harm posed by the
product. [Wright, 652 N.W.2d at 169.]...
Many factors go into the risk-utility
balancing test, which is traditionally
found in a negligence standard... [A]
plaintiff is not required to necessarily
introduce evidence of all of these factors.
And how these factors interact with the
other factors is different in each case...
How the factors interact with one another
and apply in the balancing test is a
question of fact for the jury when deciding
if the product contains a design defect...

Docket No. 62, Att. 1, p. 10-11.

The Court is persuaded that the Plaintiff is correct.

The Plaintiff's experts clearly challenged the design of the

plastic fuel tank. Specifically, Mr. Wolf states:

[t]he construction of the poly fuel tank of
the subject combine is a contributing
cause of the extensive damage suffered by
this combine as a result of this fire loss.
If the subject fuel tank had been
constructed of alternative materials, as
many fuel tanks had been constructed for
years, this fire loss may not have
developed as quickly and subsequently some

13

> of the damage would [have] been avoided due
> to the slower progression of the fire.  At
> least one combine manufacturer, John Deere,
> has changed their fuel tank design to an
> alternative (non-poly) construction, and
> this would have been a reasonable
> alternative design for this combine.

Docket No., Att. 3, p. 53.  Mr. Wyatt opined that he had

"experience with previous [combines] and [] combines [] with

the old design of a steel tank, I never saw one of those

combines have a fuel tank failure where the contents of the

diesel fuel were released and spilled on the ground."  Docket

No. 62, Att. 3, p. 26.  There is also evidence regarding

competitor combines, such as John Deere, and the type of fuel

tanks those combines have.  Although the experts' language is

not the exact phrasing found in the Restatement, it is

sufficient to get the Plaintiff past the summary judgment

stage.  Accordingly, based on the expert evidence discussed

above, the Plaintiff has created an issue of fact over a

possible design defect in the combine's fuel tank.  To

determine whether the plastic fuel tank was in fact a design

defect is a question for the finder of fact.

The Defendant's second argument is that the Plaintiff's experts do not provide a reasonable, safer alternate design. As noted above, to survive summary judgment, the Plaintiff must use expert evidence to create a genuine issue of material fact out of which reasonable persons could conclude that a reasonable alternative could have been practically adopted. In this case, the Plaintiff's claim is that the combine should have been equipped with the a metal fuel tank.

The Defendant argues that, "Plaintiff lacks any evidence that an aluminum, steel, or metal fuel tank was practical or feasible. In fact, Mt. Carmel's design defect expert failed to remotely consider, test, or evaluate whether his proposed alternative designs were practical or feasible. Further Mr. Wolf recognizes that there are a number of disadvantages to an aluminum, steel, or metal fuel tank as well as advantages to a plastic, or polyethylene, fuel tank." Docket No. 44, Att. 1, p. 11. Regarding Mr. Wyatt's opinion, the Defendant states, "[s]imilarly, Mr. Wyatt's only basis for concluding that a metal, steel, or aluminum fuel tank is a reasonable safer alternative design is his vague reference to previous combine fire investigations. Mr. Wyatt does not offer any

opinion as to the practicality or feasibility of using a metal, steel, or aluminum fuel tank in today's combines and did not conduct any testing or analysis that supports his conclusions." Id. The Defendants also discuss, at some length, the (alleged) advantages of using a plastic fuel tank.

The Plaintiff contends that their burden is limited to putting forth an alternative design that a jury could find to be reasonable. Specifically, a plaintiff "is... not required to create, design or test a proposed alternative design. [In this case], ample evidence in the form of the expert reports of Duane Wolf, the deposition testimony of Wolf and Larry Wyatt, and the evidence that the main competitor of CNH, John Deere, had switched to using an aluminum fuel tank instead of a poly fuel tank establishes that using a metal fuel tank was a feasible reasonable alternative design." Docket No. 62, Att. 1, p. 12. Mr. Wolf specifically addressed the alternate design issue and stated:

> the extent of my reasonable alternative
> design offering would be – aluminum would
> be one. John Deere is currently offering
> that on their combines. A steel fuel tank
> would be another one. Fuel tanks were
> steel before the polyethylene came into
> prominence for fuel tank construction, and
> at that point in time – so you have got

three different products, and it's really a progression. Qualitatively, a polyethylene tank is going to weaken and compromise at a lower temperature – at the lowest temperatures. Aluminum is going to melt at about 1,200 degrees Fahrenheit. So it's going to last a – it's going to last longer than poly qualitatively. Steel will melt at about 2,500 degrees Fahrenheit. It will soften or weaken at a temperature less than that. So steel is going to last longer than aluminum qualitatively. It's really a progression in terms of what material is selected, but in terms of which one is going to be damaged the quickest, it's going to be the poly.

Docket No. 62, Att. 3, p. 24. The Plaintiff also points that both Mr. Wyatt and Jim Lucus, one of the Defendant's own experts, provide evidence regarding metal fuel tanks and the fact that John Deere uses them.

Based on that testimony, the Court is persuaded that the Plaintiff proffered enough evidence to create a fact issue regarding a reasonable alternate design. The Defendant strenuously argues that Plaintiff's evidence is insufficient, specifically attacking Plaintiff's reference to John Deere's combine design. As set out in their Reply Brief, the Defendant argues that the "Plaintiff... fails to establish the reasonableness of [John Deere's] design or that the [John Deere] combines are substantially similar to the design of the

subject Combine." Docket No. 64, p. 5. However, the Defendant's argument really goes to the sufficiency of Plaintiff's evidence, and that question, weighing whether the evidence is sufficient, is for the trier of fact. The Court does not dispute that Plaintiff's alternate design could be developed in greater detail. But, to survive summary judgment, the Plaintiff need only present evidence that a jury could rely on to find a reasonable alterative, and the Plaintiff has presented that evidence.

Finally, the Defendant argues that the Plaintiff has failed to prove that the fuel tank design was a substantial factor in enhancing the damages to the combine. Put another way, the Defendant argues that the Plaintiff has failed to show that the alternate design would have eliminated the damages.

There is no question that a fire destroyed the combine and it is (relatively) undisputed that the diesel fuel spilled out of the fuel tank and accelerated the fire/destruction. The Plaintiff's basic enhanced damages argument is that plastic melts fast, metal melts slow, and that if the combine had a metal fuel tank, the tank would not have melted during

the fire and, thus, the diesel fuel would not have spilled into the fire. In short, the question is: would things have been different if the combine had a metal fuel tank?

The Defendant argues that:

> [a]n essential prima facie element of a design defect claim is that the alternative design would have reduced or prevented Mt. Carmel's damages... In fact, according to both Mr. Wyatt and Mr. Wolf, a John Deere aluminum fuel tank, when involved in a fire, can explode and result in a total loss of the combine. Yet, in his expert report, Mr. Wolf speculates that the fire may not have developed as quickly and some of the damage could have been avoided. Pure speculation is fatal to the admissibility of an expert opinion. Group Health Plan, Inc. v. Philip Morris USA, Inc., 344 F.3d 753, 760 (8th Cir. 2003)... Further, Mr. Mertens [one of CNH's experts stated that] "[t]he fuel tank involvement was irrelevant to the end result, which would have been total destruction due to involvement of combustible items higher up on the machine affecting the engine compartment and cab areas."

Docket No. 44, Att. 1, p. 13-14.

In response, the Plaintiff points to the evidence it believes could show that not using the alternate design enhanced the damages. The Plaintiff deposed CNH's engineer Jimmy Clifford, who gave a tortured admission that plastic may melt quicker than metal. Docket No. 62, Att. 3, p. 62.

Additionally, as discussed above, Mr. Wolf clearly opined that the plastic fuel tank would melt quicker than a metal fuel tank. The Plaintiff also points to the fact that the combine's metal oil tank survived the fire, while the plastic fuel tank did not. Finally, the Plaintiff notes that the video of the fire shows that after the fuel tank ruptured, the combine was quickly consumed by the fire. (Whether or not the fuel tank rupture appears obvious to the untrained eye, both Mr. Wolf and Mr. Wyatt opined that the video showed the fuel tank rupturing and the fire getting worse.)

In its Reply Brief, the Defendant suggests that the Plaintiff misunderstands the law by relying on non-expert opinion to show enhanced damages. As stated by the Defendant:

> Plaintiff cites Advance Brands for the proposition that no expert testimony is necessary "when the feasibility of a reasonable alternative design is obvious and understandable to laypersons." According to Plaintiff, "it does not require advanced degrees or specialized knowledge to know that metal is not compromised as quickly in a fire as plastics." However, Plaintiff misses the

> point and completely misquotes <u>Advance Brands</u>.

Docket No. 64, p. 2.

As discussed above, there is no dispute that some expert opinion is necessary in a design defect case. However, that requirement does not mean each and every point of fact must be supported by expert testimony. It is within the general realm of knowledge to know that some materials melt faster than others. Accordingly, the Plaintiff does not misstate the law to say that some obvious facts may be discernable to lay persons. (A child sitting around a camp fire understands that he needs to put his marshmallow on something sturdy like a stick or a piece of metal or risk losing the confection to the flames.) What does require expert testimony is how a fact, which may be obvious to a lay person, affects the damage in a given case.

The Defendants correctly point out that mere speculation is not enough to survive summary judgment. However, the Plaintiff has provided more than mere speculation. The Plaintiff has provided expert opinion on this issue. The evidence, cited above, supports with the Plaintiff's argument that using the plastic fuel tank resulted in a faster, more

destructive fire. Accordingly, the Plaintiff has met its burden to create a genuine issue of fact. Whether the opinions and evidence cited above is sufficient to prove that the plastic fuel tank enhanced the Plaintiff's damages is a question of fact that must be left for trial.

Based on the evidence discussed above, the Court is persuaded that Plaintiff has alleged sufficient facts to create a fact issue on whether the combine's plastic fuel tank enhanced the damages. Accordingly, the Defendant's Motion for Summary Judgment must be denied.

## B. Comparative Fault

The Defendant's second argument is based in comparative fault. The Defendant argues that the fire was caused because Mr. Kuker failed to properly clean and maintain the combine. The Defendant contends that because the fire was a result of Mr. Kuker's negligence, Mr. Kuker is more than 50% at fault for the damage from the fire and is thus barred from recovery.

The parties agree that Iowa has adopted a modified comparative fault doctrine. I.C.A. § 668.1, et seq. If a plaintiff is more than 50% at fault, a plaintiff is barred from any recovery. I.C.A. § 668.3. Iowa's comparative fault

doctrine applies not only to cases involving negligence, but also to cases involving product defect claims.    I.C.A. § 668.1; <u>Jahn v. Hyundai Motor Co.</u>, 773 N.W.2d 550, 560 (Iowa 2009).    Recently, the Iowa Supreme Court extended application of the comparative fault doctrine to enhanced injury product defect claims.    <u>Jahn</u>, 773 N.W.2d at 560-61.    "[I]n enhanced injury cases, the legislature has directed that the causal relation between the conduct of a product manufacturer and the resulting damages is one of the two elements to be considered in assigning a percentage of liability, but it is not solely determinative as to the allocation of fault."    <u>Id.</u> at 560. Rather, the Plaintiff's conduct must also be taken into consideration.

With that law in mind, the Defendant argues:

> Mr. Kuker's Combine was dirty – meaning that Mr. Kuker failed to properly clean and maintain the Combine.    The parties conducted a dual inspection of the Combine on December 16, 2009, approximately a month and a half after the fire.    During that time period, the Combine was sitting in the field, completely exposed to the elements, including wind, rain, and snow.    Yet, despite its exposure to the intense Iowa winter, there was a considerable amount of crop debris still evident on the Combine at the time of the inspection... Crop debris that survived not just the weather, but

also the intense fire.  In addition to the
excessive debris accumulation, the Combine
was simply beat up.  There was evidence of
broken chopper blades... and dents and
holes in the engine compartment floor
pan...  And, unlike Plaintiff's experts,
CNH's expert was able to determine a cause
of the fire:  ignition of accumulated crop
debris, which was found to be considerably
built up on the Combine.  "There was
considerable evidence of crop debris
accumulation in numerous areas, surfaces,
and locations including the engine
compartment – where every witness first
observed the fire – frame, chopper shaft
enclosure, and adjacent surfaces."  Due to
the excessive amount of crop debris
accumulated on the Combine, Mr. Kuker's
early attempts to extinguish the fire were
unsuccessful.  "The extent of crop debris
seen on this combine indicated that
cleaning was insufficient."  CNH has set
forth ample evidence to support its
affirmative defense that the fire was
caused by Mr. Kuker's own negligence.
In fact, it is undisputed that Mr.
Kuker's own negligence caused the fire.
Mt. Carmel cannot set forth any admissible
evidence that Mr. Kuker properly cleaned
and maintained his Combine.  As such, Mt.
Carmel's design defect claim is barred
pursuant to Iowa's comparative fault
doctrine and summary judgment in favor of
CNH is appropriate.

Docket No. 44, Att. 1, p. 15-16.

The Plaintiff responds that:

> [w]hether Jacob Kuker was negligent in
> maintaining the combine and whether such
> negligence, if any did exist, contributed
> to the damages is a question of fact that
> the jury must resolve...  CNH cannot
> prove that the undisputed facts are that
> Jacob Kuker was at fault for the damage or
> even that he was more at fault than CNH.
> Rather, the evidence is that Jacob Kuker
> acted reasonably in maintaining his combine
> and was not negligent. At minimum this is
> a disputed question of fact. Jacob Kuker
> testified that the combine was cleaned the
> night before the incident. J. Kuker Dep.
> 84:13-19, Pl's App. 8. The combine was
> generally cleaned off every night except if
> they got rained out or finished a field
> early that day. J. Kuker Dep. 69:16-70:10,
> Pl's App. 5-6. The approximately twenty
> minute cleaning involved using a truck
> mounted air compressor to thoroughly blow
> off all dust and debris from the combine.
> J. Kuker Dep. 69:16-75:4, Pl's App. 5-7.
> CNH's engineer Lucas acknowledged that
> combines operate in dusty dry conditions
> and that finding crop debris on a combine
> that has been operating can occur. Lucas
> Dep. 143:4-17, Pl's App. 35. Lucas also
> testified that despite the best design and
> the best efforts to remove crop debris from
> the combine that some conditions will still
> cause crop debris to build up. Lucas Dep.
> 148:5-11, Pl's App. 36. Lucas was also
> aware that some dealers and customers have
> complained to CNH that despite their best
> efforts to clean the combine there were
> areas on the combine that were
> inaccessible...

Docket No. 62, Att. 1, p.

The Plaintiff is correct.  Unlike the prior section, this argument requires no complex analysis.  The Defendant's argument is simple:  Mr. Kuker was negligent and that negligence caused the fire.  However, that argument is just that, an argument.  The Defendant relies on pictures (some included in its brief) and expert testimony to show that the combine was covered in debris and that debris led to the fire.  However, there is no way the Court can conclude - as a matter of law - that Mr. Kuker's negligence contributed to the fire.

As the Plaintiff points out, there is a dispute as to the cause of the fire.  While the Defendant's expert states that the fire was caused by the lack of cleaning, the Plaintiff's expert says the cause of the fire was undeterminable.  The Defendant argues that the combine was clearly dirty.  The Plaintiff argues that Mr. Kuker properly maintained the combine, cleaned it the night before the fire, and that it is generally acknowledged that there are areas on these combines that are inaccessible for cleaning.  These are factual disputes.  The jury must weigh this evidence and testimony and determine what caused the fire, and who, if anyone, is at

fault. Accordingly, the Defendant's Motion for Summary Judgment must be denied.

## VII. CONCLUSION

For the reasons set out above, the Defendant's Motion for Summary Judgment, Docket No. 44, is **DENIED.**

**IT IS SO ORDERED** this 20th day of March, 2015.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa